PHILIP R. SELLINGER
United States Attorney
JOHN F. BASIAK JR.
Assistant United States Attorney
402 East State Street, Room 430
Trenton, NJ 08608
(609) 858-0309
john.basiak@usdoj.gov
*Attorneys for Respondent*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IMAD DAWARA, | Hon. Robert B. Kugler, U.S.D.J. |
| *Petitioner*, | Civil Action No. 23-21817 |
| v. | |
| R. THOMPSON, WARDEN, | |
| *Respondent*. | |

---

## RESPONDENT'S ANSWER TO THE PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

---

On the Answer:

JOHN F. BASIAK JR.
Assistant United States Attorney

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................... 3

    A.   Background: Petitioner Burns Down His Hookah Lounge ............................... 3

    B.   The Petition ........................................................................................................ 4

    C.   BOP's Custody Classification System ............................................................... 5

    D.   BOP's Administrative Remedy Process ............................................................ 5

LEGAL ARGUMENT .................................................................................................................. 6

I.    THE PETITION IS MOOT ................................................................................................ 6

II.   PETITIONER FAILED TO FULLY EXHAUST HIS ADMINISTRATIVE
       REMEDIES ........................................................................................................................ 7

III.  THE COURT LACKS JURISDICTION OVER PETITIONER'S CARES ACT
       HOME CONFINEMENT CLAIM ................................................................................. 10

IV.  THE COURT LACKS JURISDICTION OVER PETITIONER'S CHALLENGE
       TO HIS CUSTODY CLASSIFICATION ...................................................................... 14

CONCLUSION ........................................................................................................................... 16

**PRELIMINARY STATEMENT**

Petitioner Imad Dawara is serving a 108-month term of imprisonment for conspiracy to commit arson and conspiracy to defraud the United States. Petitioner and his brother participated in a scheme to recover insurance proceeds by setting fire to their Philadelphia hookah lounge. The fire destroyed the building where Petitioner's business was located, displaced approximately 160 people, and resulted in the closure of the 200 block of Chestnut Street for months, harming local businesses.

On November 2, 2023, Petitioner filed a petition under 28 U.S.C. § 2241 seeking immediate placement in home confinement under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, a program that expired on June 10, 2023. Petitioner argues that he is entitled to CARES Act home confinement because of "serious heart problems since October of 2022," which BOP allegedly neglected, resulting in a "heart attack on June 11, 2023 and subsequent heart surgery." Petitioner also disputes a determination by the Federal Bureau of Prisons ("BOP") that his arson offense constitutes a "crime of violence," which weighs against his placement in home confinement.

The Court should dismiss the petition for four reasons. First, the petition is moot. Petitioner's only requested relief is placement in home confinement under the CARES Act. However, that relief is no longer available because BOP's authority under the CARES Act to place inmates in home confinement expired on June 10, 2023, after the President of the United States declared that the COVID-19 national

emergency had ended. BOP's home confinement authority is now limited by 18 U.S.C. § 3624(c)(2), which states that BOP may place inmates in home confinement for "the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." Petitioner is not eligible for home confinement under § 3624(c)(2) because he does not satisfy either of these criteria given the length of his remaining sentence.

Second, Petitioner failed to exhaust his administrative remedies. Before a federal inmate can seek habeas relief under 28 U.S.C. § 2241, he must ordinarily exhaust his administrative remedies with BOP. Courts in this District diligently enforce this requirement and ordinarily only excuse exhaustion when it would be futile or the petition solely raises an issue of statutory interpretation. Those exceptions do not apply here.

Third, the Court lacks jurisdiction over Petitioner's CARES Act home confinement claim because it is a placement decision, and discretion over placement decisions rests solely with BOP. Furthermore, BOP's decision on where to place Petitioner—whether on home confinement, at FCI Fort Dix, or some other BOP institution—does not affect the fact or duration of Petitioner's sentence, which is the core purpose of habeas.

Finally, the Court lacks jurisdiction over Petitioner's challenge to his "crime of violence" custody classification. A custody classification does not affect the fact or duration of Petitioner's sentence, and Congress has given BOP full discretion to control these conditions of confinement. Petitioner has no statutory or constitutional

2

entitlement regarding a custody classification sufficient to invoke due process. Thus, the Court should dismiss the petition.

## STATEMENT OF FACTS

### A. Background: Petitioner Burns Down His Hookah Lounge

Petitioner and his brother participated in a scheme to recover insurance proceeds by setting fire to their Philadelphia restaurant and hookah lounge. *See United States v. Imad*, No. 19-cr-414 (E.D. Pa.), ECF No. 78 at 7-10 (factual basis for plea).[1] According to an investigation conducted by the Bureau of Alcohol, Tobacco, Firearms, and Explosives, "the fire originated in the basement of 239 Chestnut Street and was the result of an open flame intentionally applied to gasoline, specifically the vapors, poured on available combustibles located in the offices in the basement." *Imad*, No. 19-cr-414 (E.D. Pa.), ECF No. 78 at 8. The fire destroyed the building where Petitioner's business was located, displaced approximately 160 people, and resulted in the closure of the 200 block of Chestnut Street for months, which harmed local businesses. *See id.* at 7-8.

Petitioner pleaded guilty in February 2021. *See id.*, ECF No. 67 (notice of change of plea). On June 28, 2021, the sentencing court in the Eastern District of Pennsylvania sentenced Petitioner to 108 months of imprisonment for conspiracy to commit arson, in violation of 18 U.S.C. § 844(n), and 60 months of imprisonment for

---

[1] *See also Dawara Brothers Sentenced to Nine Years Imprisonment for Arson and Tax Fraud Conspiracy Stemming From February 2018 Old City Fire*, https://www.justice.gov/usao-edpa/pr/dawara-brothers-sentenced-nine-years-imprisonment-arson-and-tax-fraud-conspiracy (last visited Jan. 23, 2024); *Chestnut St. Consol., LLC v. Dawara*, 619 F. Supp. 3d 489, 503 (E.D. Pa. 2022) (describing fire and insurance scheme).

conspiracy to defraud the United States, in violation of § 371, to be served concurrently. *Id.*, ECF No. 94 (criminal judgment). The sentencing court also ordered Petitioner to pay more than $22 million in restitution. *Id.* Petitioner's projected release date from BOP custody is June 16, 2027. Declaration of Cyntrena Cross-Peart ("Cross-Peart Decl."), Ex. 2 at 1.

### B. The Petition

Petitioner has made at least two attempts to obtain home confinement. Petitioner initially filed a motion for compassionate before his sentencing court on October 16, 2023. *See Dawara*, No. 19-cr-1414 (E.D.Pa.), ECF No. 121 at 21. Petitioner argued he was entitled to relief because, among other factors, he is suffering from allegedly untreated heart-related issues. *See id.* at 18-19. His motion before the sentencing court remains pending.

On November 2, 2023, less than a month after filing his motion for compassionate release, Petitioner filed the present petition before this Court seeking home confinement under the CARES Act. Similar to his compassionate release motion, Petitioner argues that he is entitled to home confinement because of allegedly "serious heart problems since October of 2022," which BOP allegedly neglected, resulting in a "heart attack on June 11, 2023 and subsequent heart surgery." Pet. ¶ 13, ECF No. 1 at 6. Petitioner also argues that conspiracy to commit arson is not a "crime of violence" and that he served more than 50% of his sentence, both of which should entitle him to CARES Act home confinement. *See id.* ¶ 7 at 2.

4

### C. BOP's Custody Classification System

BOP's designation of Petitioner's offenses for purposes of an appropriate custody classification and placement is dictated by Program Statement 5100.08, Inmate Security Designation and Custody Classification.[2]  "All classification, designation, and redesignation decisions are made without favoritism given to an inmate's social or economic status." Cross-Peart Decl. ¶ 12. "As reflected in Program Statement 5100.08, a classification of 'Serious History of Violence' is made when there has been a finding of guilt made reflecting that an individual engaged in aggressive or intimidating behavior which is likely to cause serious bodily harm or death (e.g., aggravated assault, domestic violence, intimidation involving a weapon, incidents involving arson or explosives, rape, etc.)." *Id.* ¶ 13. "As further reflected in Program Statement 5100.08, the BOP's offense severity scale classifies the offense of arson as a "Greatest Severity" offense due to the substantial risk of death or bodily injury posed by the offense." *Id.* ¶ 15.

### D. BOP's Administrative Remedy Process

Prior to filing his petition, Petitioner did not fully exhaust his administrative remedies. Cross-Peart Decl., Ex. 1 at 3. BOP has established a multilevel process for federal inmates to exhaust administrative remedies. 28 C.F.R. § 542.10, *et seq.* To comply with this process, an inmate must first "present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." *Id.* § 542.13(a). Second, if the inmate

---

[2] https://www.bop.gov/policy/progstat/5100_008cn.pdf (last visited Jan. 23, 2024).

5

is not satisfied, he may submit a "formal written administrative Remedy Request, on the appropriate form (BP-9)," within "20 calendar days following the date on which the basis for the Request occurred." *Id.* § 542.14(a).  Third, if the inmate "is not satisfied with the Warden's response," which must issue within 20 days, the inmate may "submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." *Id.* § 542.15(a).  Finally, "[a]n inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." *Id.*  A court will only consider an inmate to "exhaust" BOP's administrative remedy process when the BOP General Counsel denies an inmate's final appeal.  Cross-Peart Decl. ¶ 7.

## LEGAL ARGUMENT

### I. THE PETITION IS MOOT

The petition is moot because Petitioner's sole requested relief is CARES Act home confinement, and the CARES Act's expansion of home confinement expired when the COVID-19 emergency ended.  *See* CARES Act § 12003(b)(2) (modifying § 3624(c)(2) "during the covered emergency period"); Public Law 118-3 ("the national emergency declared by the finding of the President on March 13, 2020, in Proclamation 9994 (85 Fed. Reg. 15337) is hereby terminated.").

BOP no longer has the authority to lengthen the maximum amount of time that an inmate is statutorily permitted to spend in home confinement under § 3624(c)(2)—"the shorter of 10 percent of the term of imprisonment of that prisoner or

6

6 months." And Petitioner, who is currently serving a 108-month sentence, is not yet eligible for home confinement under § 3624(c)(2). Thus, the Court should dismiss the petition as moot. *See Cipolla v. Knight*, No. 22-2654 (RMB), 2023 WL 8664676, at *2 (D.N.J. Dec. 15, 2023) (noting that CARES Act home confinement claims are "moot because the BOP's authority under the CARES Act expired on June 10, 2023, after the President of the United States declared the COVID-19 national emergency had ended").

## II. PETITIONER FAILED TO FULLY EXHAUST HIS ADMINISTRATIVE REMEDIES

The Court should dismiss the petition because Petitioner did not fully exhaust his administrative remedies prior to seeking habeas relief from this Court. Generally, a federal inmate must first exhaust administrative remedies before they can seek habeas relief under 28 U.S.C. § 2241. *See, e.g., Vasquez v. Strada*, 684 F.3d 431, 433 (3d Cir. 2012); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760-62 (3d Cir. 1996). As the United States Supreme Court recognized in the context of the Prison Litigation Reform Act, exhaustion serves several critical interests:

> First, exhaustion protects administrative agency authority. Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures.
>
> Second, exhaustion promotes efficiency. Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court. In some cases, claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court. And even where a controversy survives administrative review, exhaustion of the

7

>administrative procedure may produce a useful record for subsequent judicial consideration.

*Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) (cleaned up).  Courts within this Circuit similarly require an inmate to exhaust administrative remedies in the habeas context because exhaustion promotes these important interests.  *See Arias v. U.S. Parole Comm'n*, 648 F.2d 196, 199 (3d Cir. 1981) ("[The Third Circuit] ha[s] adhered to the exhaustion doctrine for several reasons: (1) judicial review may be facilitated by allowing the appropriate agency to develop a factual record and apply its expertise, (2) judicial time may be conserved because the agency might grant the relief sought, and (3) administrative autonomy requires that an agency be given an opportunity to correct its own errors." (citations omitted)); *see also Briley v. Warden Fort Dix FCI*, 703 F. App'x 69, 71 (3d Cir. 2017).

Although courts may excuse the exhaustion requirement for habeas petitions under limited circumstances, such as when exhaustion would be futile,[3] courts routinely enforce the requirement where, as here, there is no compelling justification to excuse the petitioner's failure to exhaust.  *See, e.g., Velez v. Zickefoose*, No. 10-3992 (NLH), 2010 WL 5186158, at *3 (D.N.J. Dec. 15, 2010) ("[I]t has been long established that an inmate's unjustified failure to pursue administrative remedies results in procedural default warranting decline of judicial review."); *Brown v. Grondolsky*, No. 09-3290 (RMB), 2009 WL 2778437, at *1-2 (D.N.J. Aug. 31, 2009) (noting that the

---

[3] *See, e.g., Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988).

exhaustion requirement "is diligently enforced by the federal courts" and the futility exception applies only in "certain narrow circumstances").

Petitioner has not exhausted his administrative remedies regarding his request for CARES Act home confinement. Petitioner filed an administrative remedy seeking home confinement on July 26, 2023. Cross-Peart Decl., Ex. 1 at 3. On August 15, 2023, the Warden at FCI Fort Dix denied Petitioner's request. *See id.*[4] On August 31, 2023, Petitioner appealed the Warden's decision to BOP's Regional Office in Philadelphia, Pennsylvania, which denied the appeal on December 22, 2023. Cross-Peart Decl. ¶ 10 and Ex. 1 at 4. Petitioner alleges that he is still waiting to receive his response from "the Regional Director, nor has the Petitioner received any notice of an extension in writing from the Regional Director." Pet., ECF No. 1-1 at 11. Moreover, BOP has no record of Petitioner filing an appeal with the BOP's Central Office in Washington, D.C. from the decision of the Regional Director, which is the final step of the administrative remedy process. Cross-Peart Decl. ¶ 11 and Ex. 1. Thus, the Court should dismiss the petition for failure to exhaust.

Petitioner concedes that he did not exhaust his administrative remedies prior to filing his petition because it would be "futile," *see* Pet., ECF No. 1-1 at 9-10, and he suggests that BOP bears the blame for delaying the outcome of his appeal from the

---

[4] Paragraph 9 of the Cross-Peart Declaration lists November 15, 2023 for the date of the Warden's denial of Petitioner's administrative grievance, but that is a typographical error. As set forth in Exhibit 1 to the Cross-Peart Declaration and Petitioner's own petition, the Warden denied Petitioner's grievance on August 15, 2023. *See* Pet., ECF No. 1-4 at 6 (Warden's denial).

9

Regional Director, *see id.* at 11. But a "bare allegation that prison officials 'somehow thwarted' [an inmate's] efforts to exhaust administrative remedies is not enough to show that the grievance procedure was unavailable to him." *Powell v. Barraza*, No. 23-cv-712, 2023 WL 4276471, at \*2 (M.D. Pa. Jun. 29, 2023); *see also See Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018) (discussing onus on plaintiff-inmate to demonstrate "unavailability" to exhaust administrative remedies under the Prison Litigation Reform Act). Thus, the Court should reject Petitioner's vague effort to avoid the administrative exhaustion requirement.

### III. THE COURT LACKS JURISDICTION OVER PETITIONER'S CARES ACT HOME CONFINEMENT CLAIM

To the extent the petition is not moot—which it is—the Court would still lack jurisdiction over the petition. Courts in this circuit have made clear that a district court has no authority to order BOP to place an inmate in home confinement. That discretion rests solely with BOP. *See Tetterton v. Warden, FCI Fort Dix*, No. 23-1394 (CPO), 2023 WL 4045086, at \*2 (D.N.J. June 16, 2023) ("to the extent Petitioner seeks a direct order for home confinement, this Court 'has no authority to issue such an order'") (quoting *United States v. Farlow*, Crim. No. 18-44, 2021 WL 1207485, at \*4 (D.N.J. Mar. 30, 2021)). Thus, the Court should dismiss Petitioner's CARES Act home confinement claim.

Habeas corpus relief under § 2241 is traditionally available only "where the deprivation of rights is such that it necessarily impacts the fact or length of detention." *Leamer v. Fauver*, 288 F.3d 532, 540 (3d Cir. 2002). The Third Circuit also permits an inmate to bring § 2241 petition to challenge the execution of his

10

federal sentence, where BOP is allegedly violating a statute or "BOP's conduct was somehow inconsistent with a command or recommendation in the sentencing judgment." *Cardona v. Bledsoe*, 681 F.3d 533, 537 (3d Cir. 2012) (discussing *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 242 (3d Cir. 2005); *McGee v. Martinez*, 627 F.3d 933, 936-37 (3d Cir. 2010)).

"By contrast, constitutional claims that merely challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of that core" habeas jurisdiction. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004); *see also Stanko v. Obama*, 393 F. App'x 849, 851 (3d Cir. 2010) (holding that district court properly dismissed prisoner's claims of cruel and unusual punishment and constitutional violations resulting from the seizure of his papers because those claims "clearly fall outside the realm of challenges brought in habeas"); *Johnson v. Warden Canaan USP*, 699 F. App'x 125, 126 (3d Cir. 2017) ("The Court correctly reasoned that Johnson was challenging the conditions of his confinement rather than the execution of his sentence, and thus that habeas corpus was not an available remedy."). Federal prisoners wishing to pursue such claims must ordinarily use other means, not habeas.[5]

---

[5] The "appropriate remedy for such constitutional violations, if proven, would be a judicially mandated change in conditions and/or an award of damages, but not release from confinement." *Davis v. Pa. Dep't of Corrs.*, No. 15-587, 2015 WL 5918909, at *4 (W.D. Pa. Sept. 11, 2015) (citing *Murphy v. Brooks*, 132 F.3d 43 (10th Cir. 1997) (table)), *R&R adopted*, 2015 WL 5918909 (Oct. 7, 2015); *see also Vendetti v. Ortiz*, No. 21-5193 (NLH), 2022 U.S. Dist. LEXIS 5068, at *2 n.2 (D.N.J. Jan. 11, 2022) (discussing the appropriate procedural means for an inmate to challenge conditions of confinement); *Crawford v. Bell*, 599 F.2d 890, 891-92 (9th Cir. 1979).

BOP's home confinement decisions (under the CARES Act or otherwise) do not affect the fact, duration, or execution of an inmate's sentence.  *See Tetterton*, 2023 WL 4045086, at *2-4 ("[T]he BOP's home confinement decisions affect only *where* and under what circumstances Petitioner will serve his sentence, rather than the 'fact or duration' of his sentence.  Nor do they affect the 'execution' of his sentence, as the BOP's decisions on home confinement do not impact or conflict with his sentencing court's judgment or recommendations." (citations omitted)); *Romano v. Warden, FCI Fairton*, No. 23-1052 (CPO), 2023 WL 3303450, at *4 (D.N.J. May 8, 2023); *Washington v. Warden Canaan USP*, 858 F. App'x 35, 36 (3d Cir. 2021) ("[W]hether to transfer an inmate to home confinement is a decision within the exclusive discretion of [] BOP." (citations omitted)); *see also United States v. Goldblatt*, No. 18-345-SDW, 2021 WL 287881, at *2 (D.N.J. Jan. 28, 2021); *United States v. Calabretta*, No. 12-131-SRC, 2020 WL 6055441, at *4 (D.N.J. Oct. 14, 2020).

In other words, when it comes to decisions concerning an inmate's eligibility for CARES Act home confinement, "BOP has the first and last word." *United States v. Dunich-Kolb*, No. 14-150-KM, 2020 WL 6537386, at *12 (D.N.J. Nov. 5, 2020).  A petitioner cannot "use § 2241 as an end-run around the compassionate release statute [] and the federal CARES Act" because it "vests in the Director of [BOP] discretion to transfer an inmate to home confinement." *Olson v. Warden Schuylkill FCI*, No. 21-2436, 2022 WL 260060, at *2 (3d Cir. Jan. 27, 2022) (citations omitted).

---

Thus, to the extent Petitioner is alleging he received inadequate medical care, he has remedies available to him outside of habeas.

"Congress's decision to grant the Attorney General and BOP this substantial authority and discretion concerning home confinement under the CARES Act reflects a long-standing practice of deferring to BOP regarding the transfer and placement of inmates." *Davey v. N'Diaye*, No. 22-2254-RMB, 2023 WL 2570221, at *7 (D.N.J. Mar. 20, 2023). Under 18 U.S.C. § 3621(b), it is solely the responsibility of BOP to "'designate the place of the prisoner's imprisonment' based on an individualized and fact-intensive analysis of the inmate." *Id.* (quoting 18 U.S.C. § 3621(b)). "Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of [BOP] under this section to determine or change the place of imprisonment of that person." *Id.* (quoting 18 U.S.C. § 3621(b)(5)). Furthermore, "a designation of a place of imprisonment under this subsection is not reviewable by any court." *Id.* (quoting 18 U.S.C. § 3621(b)(5)).

Here, BOP's decision to reject Petitioner's home confinement request did not affect the fact or duration of his sentence, and Petitioner does not allege that it violated any sentencing command. No matter where Petitioner serves his sentence—whether at FCI Fort Dix, home confinement, or some other BOP institution—he will still be in BOP custody until June 16, 2027, subject to any unrelated factors such as disciplinary sanctions. Thus, the Court lacks jurisdiction over Petitioner's CARES Act home confinement claim.

### IV. THE COURT LACKS JURISDICTION OVER PETITIONER'S CHALLENGE TO HIS CUSTODY CLASSIFICATION

To the extent Petitioner is challenging BOP's classification of his arson offense as a "crime of violence," the Court lacks jurisdiction over Petitioner's claim. As with placement decisions, BOP's custody classifications do not present a core habeas issue. "Challenges to custody classification, such as the designation of a public safety factor, do not affect the fact or length of confinement and are not cognizable under § 2241." *Bloom v. United States*, No. 19-21982 (RMB), 2020 WL 410163, at *1 (D.N.J. Jun. 24, 2020) (citing *Hribick v. Warden Fort Dix FCI*, 695 F. App' x 25, 25-26 (3d Cir. 2017)). Rather, "Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process." *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976).

The fact that a custody classification may carry "'adverse consequences for prison inmates'" does not "'automatically activate[] a due process right.'" *Young v. Grandolsky*, No. 08-2653 (RMB), 2009 U.S. Dist. LEXIS 9291, at *2 (D.N.J. Feb. 6, 2009) (quoting *Moody*, 429 U.S. at 88 n.9). This is because a custody classification does not increase the length of an inmate's sentence and is not "an additional punishment[] for the original offense." *See id.* (citing *Stiver v. Meko*, 130 F.3d 574, 578-79 (3d Cir. 1997); *Perez v. Fed. Bureau of Prisons*, 229 F. App'x 55, 58 (3d Cir. 2007)); *see, e.g.*, *Briley v. Ortiz*, No. 16-5571 (RMB), 2017 U.S. Dist. LEXIS 60968, at *11-12 (D.N.J. Apr. 21, 2017) (dismissing challenge to public safety factor that precluded transfer to a minimum-security prison camp). Conversely, the removal of

14

a public safety factor or the adjustment of a custody classification would "not guarantee" an earlier release. *See Wilks v. Mundt*, 25 F. App'x 492, 492-93 (8th Cir. 2002) (discussing early-release incentive in drug treatment program). Thus, BOP's classification of Petitioner's offense as a "crime of violence" does not affect the fact or duration of an inmate's confinement.

Petitioner's own circumstances demonstrate that BOP's custody classification does not affect the fact or duration of his confinement or the execution of his sentence. No matter how BOP classifies his offenses for purposes of a custody classification, Petitioner's projected release date remains June 16, 2027, excluding unrelated factors such as disciplinary sanctions. *See* Cross-Peart Decl., Ex. 2 at 1.

Moreover, BOP's designation of Petitioner's offense and his custody classification do not currently affect Petitioner's home confinement eligibility because there is no statutory basis to place Petitioner in home confinement until "the shorter of 10 percent of the term of imprisonment . . . or 6 months," which has not occurred. *See* 18 U.S.C. § 3624(c)(2).

Lastly, even if Petitioner was statutorily eligible for home confinement—which he is not—his custody classification was only one factor in a fact-specific analysis weighing against his home confinement placement. *See* Pet., ECF No. 1-4 at 6 (noting that Petitioner's violent offense was a factor weighing against his CARES Act home confinement placement). And BOP did not abuse its discretion in weighing these factors and deciding that Petitioner was not appropriate for home confinement at this time. Thus, the Court should dismiss the petition.

15

## **CONCLUSION**

For the reasons set forth above, the Court should dismiss the petition.

                                          Respectfully submitted,

                                          PHILIP R. SELLINGER
                                          United States Attorney

                          By:    /s/ John F. Basiak Jr.
                                          JOHN F. BASIAK JR.
                                          Assistant United States Attorney
                                          *Attorneys for Respondent*

Dated: January 23, 2024