UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
Camden Division

RECEIVED

MAR -7 2024

AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ

IMAD DAWARA,
    Petitioner,

v.                                    Civ. No. 23-21817

R. THOMPSON, WARDEN,
    Respondent.
_____/

## REPLY TO GOVERNMENT'S RESPONSE
## IN OPPOSITION TO DEFENDANT'S PETITION FOR A WRIT
## OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

### I. INTRODUCTION

Imad Dawara, Petitioner, proceeding pro se, herewith replies to the government's Answer to the Petitioner for a Writ of Habeas Corpus ("Response"), dated January 23, 2024, and which he has filed pursuant to 28 U.S.C. § 2241.

Petitioner filed a petition under 28 U.S.C. § 2241 on November 2, 2023, seeking placement on home confinement, or home detention, as his life is in danger due to continued medical neglect, deliberate indifference, and discrimination on behalf of Bureau of Prisons' ("BOP") staff and officials. He contends that his conspiracy conviction should not be considered "violent" as he was not present at the crime, and his role in this crime was only one of discussion.

Petitioner asserts that, due to ongoing medical neglect, deliberate indifference to Petitioner's serious medical needs, and the discrimination exuded by BOP staff, he should not have been denied CARES Act placement on

1

home confinement. Petitioner therefore asks this Honorable Court to consider resentencing him to a term of home detention, if the Court is unable to order the BOP to place him on home confinement pursuant to the CARES Act. Being on home detention or confinement will allow Petitioner to seek more appropriate medical care that the BOP is apparently unwilling or unable to provide him.

Petitioner has met his burden showing that he is suffering from a significant medical condition, which the BOP was made aware of as early as October of 2022, and which they ignored until its culmination of a severe heart-attack on June 11, 2023, almost 9 months after he began showing symptoms of heart disease. Petitioner's move to home confinement is appropriate in light of the nature and circumstance of his offense; that he poses no threat to his community or any person if released; and that the harsh conditions of his confinement and ongoing medical circumstances should weigh heavily in favor when considering him for placement on home detention or confinement, as this Court deems appropriate.

II. DISCUSSION

A review of the government's Response shows four (4) arguments against Petitioner's habeas corpus petition. Each of these is responded to in turn:

1. CARES Act is Over / Petition is Moot

Even while the Bureau of Prisons' authority to place inmates on home confinement under the CARES Act expired on June 10, 2023, after President Biden ended the national COVID-19 emergency, Petitioner contends that he should have already been placed on home confinement under CARES due to his serious medical condition, his non-violent conviction, and due to his elevated risk to COVID-19 and other infectious diseases. Petitioner filed for

2

placement on home confinement under the CARES Act on May 9, 2023, well before the CARES Act sun-downed in June of 2023. Petitioner believes that he was discriminated against, as other federal prisoners with similar charges and convictions, with similar medical conditions, were already placed on home confinement under CARES. That home confinement was afforded those inmates which allowed them to seek more appropriate medical care and treatment, treatment which the American taxpayers did not have to pay for. Most of this medical treatment is at a significantly higher level of care than is available within the federal prison system.

## 2. The Government Contends that Petitioner Failed to Exhaust his Administrative Remedies

In their Response, the government alleges that the Petitioner failed to exhaust his administrative remedies before seeking habeas corpus relief. The courts in this District enforce the requirement that a federal prisoner exhaust all administrative remedies available to the prisoner before petitioning the courts for habeas relief. Petitioner contends that he has made diligent effort to exhaust his administrative remedies, and the Bureau of Prisons has violated his due process rights and blocked his access to the courts every step of the way, effectively rendering further attempts at exhaustion futile. He has exhausted what remedy has been made available.

### a. The BOP Does Not Follow Their Own Procedures

Any time a federal agency promulgates policy and procedures they become held accountable to follow those policies and procedures, pursuant to the Administrative Procedures Act, 5 U.S.C. § 551 et seq., and the Due Process Clause of the Fifth Amendment. Bureau of Prisons' has established an "administrative remedy" process for federal prisoners to seek remedy or

3

redress. 28 C.F.R. § 542.10, et seq. In order to seek a writ of habeas corpus a federal prisoner must first attempt to informally resolve the issue, and then he may seek more formal resolution. Once he has exhausted this remedy process he may then petition the district court for a writ of habeas corpus.

A review of the attached administrative remedy documents show that the Petitioner has made every effort to exhaust his administrative remedy, and the BOP violated their own procedures and Petitioner's due process rights every step of the way.

### i. Cop-out to 5852 Unit Team / Informal Resolution Request

Attached as EXHIBIT A, dated June 1, 2023, Petitioner submitted a request for "informal resolution" to his Unit Team. In that "cop-out" he requested reconsideration of the denial of his May 9, 2023 request for home confinement under CARES by his case manager, Mr. Olson, for placement on home confinement under the CARES Act. This informal resolution was denied by Unit Team on June 6, 2023, due to Petitioner's crime apparently being considered by the BOP a "violent" offense.

### ii. BP-8 Submitted to Petitioner's Unit Counselor

The attached BP-8 (EXHIBIT B), which Petitioner submitted on June 6, 2023, asserts that his conspiracy charge is an inchoate offense and should not therefore be considered a "crime of violence". Petitioner also challenged the denial of CARES Act placement as he had only served "40% of [his] federal sentence", and that more than 50% served was necessary to be considered for CARES Act placement. Petitioner showed at that time that he had served more than 60% of his statutory sentence. This BP-8 was denied on June 13, 2023 due to his "conviction is categorized as a crime of violence", and that "[a]s of

4

May 11, 2023 inmates are no longer being referred for home confinement under the CARES Act." This denial was not provided to Petitioner until June 27, 2023.

### iii. BP-9 Request for Administrative Remedy to Warden of FCI Fort Dix

On July 5, 2023, Petitioner submitted a formal request ("BP-9") to the Warden of his prison, Mr. Andy Cruz. (See EXHIBIT C: BP-9 to Warden Cruz, dated July 5, 2023) In this administrative remedy request Petitioner challenges the classification as a "violent offender" under the CARES Act, contesting his classification by BOP as "violent" is inaccurate as his conspiracy charge is considered an "inchoate offense" and therefore non-violent by definition. He notifies the warden in that BP-9 that he is suffering significant and severe medical problems, and requests to be released from custody so that he may seek more appropriate medical care.

### iv. Response on BP-9 from Warden Cruz is Untimely

On August 16th, 2023, Petitioner was provided a denial of his BP-9 from the Warden's office (See EXHIBIT D: Response to BP-9, dated 8/14/2023). In that denial, Warden Cruz states that "[Y]our charge for a violation of title 18 USC 844(N), Conspiracy to Commit Arson, is classified as a crime of violence under Program Statement 5162.05 ... [t]his charge weighed against your suitability for Direct Home Confinement via the CARES Act." Of note here is that the August 16th response to Petitioner's July 5th BP-9 was outside of the BOP's administrative remedy process detailed under 28 CFR § 542.18. (See attached as EXHIBIT E: Administrative Remedy - 28 CFR § 542.18.

The BOP's response time to a BP-9 request states: "Once filed, response <u>shall</u> be made by the warden or CCM within 20 calendar days ... [i]f

5

the Request is determined to be of an <u>emergency</u> nature which threatens the inmate's immediate health or welfare, the Warden <u>shall</u> respond no later than the third calendar day after filing. If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days ... [s]taff <u>shall</u> inform the inmate of this extension in writing."

A review of the attached BP-9 and the Response will show that the Warden did not respond within 3 calendar days, even though Petitioner was having an emergent and serious medical crisis during the months of June, July and August, nor did the Warden respond within the standard 20 calendar days. The Warden did <u>not</u> notify the inmate in writing that additional time to make an appropriate decision was necessary. The Warden would not respond until August 14th, which is outside the emergency window (3 days) and outside the standard response time of 20 days. The Warden's office did not provide any written notification to the Petitioner that additional time would be needed. At this level it became apparent that the BOP was violating due process rights.

v. Dawara Submits a Timely BP-10 to the Northeast Regional Office

On August 25, 2023, Petitioner submitted a BP-10 to the Northeast Regional office of the BOP (See EXHIBIT F: BP-10 Administrative Remedy, dated August 25, 2023) in Philadelphia. At this stage of the administrative remedy Petitioner continues to challenge the BOP's assessment that his conspiracy charge is violent, and asserts that BOP is utilizing an outdated definition of "crime of violence" in BOP Program Statement § 5162.05. He pleads with the Northeast Regional office to reconsider his placement on home confinement because he is "suffering greatly from emergent and severe heart conditions" and that denial of his placement on home confinement under CARES is a

violation of his Fifth Amendment rights to equal protection under the law. By that time Petitioner has already been rushed to the hospital by ambulance five (5) times for emergency medical care related to this ongoing heart condition.

### vi. BOP's Response to Petitioner's BP-10 is Untimely

On January 2, 2024, the Bureau of Prisons sent Petitioner an "Extension of Time for Response" notice (See EXHIBIT G: Extension of Time for Response, dated January 2, 2024) In that extension notification the BOP states "Additional Time is Needed to Respond", and that his response is due on October 20, 2023, which is 72 days before the notice for extension was generated. On January 30, Petitioner received the Region's denial of his BP-10, which the regional office director had dated December 22nd, 2023. In that denial the director stated that Petitioner had 30 CALENDAR DAYS to appeal the denial "from the date of the denial" or it would not be accepted. So, the BP-10 was denied on December 22nd, but was not provided to Petitioner until January 30th, eight (8) days outside of his appeal window.

### vii. Petitioner's BP-11 to BOP Central Office

As Petitioner had not yet received a denial of his BP-10 by January 23, 2024, he submitted a BP-11 administrative remedy to the Central Office of the Bureau of Prisons, located in Washington, D.C. He considered the August 31, 2023, BP-10 denied at the regional level and moved forward with the BP-11. (See EXHIBIT H: BP-11 to BOP Central Office, dated January 23, 2024). He was following the BOP's process detailed under 28 CFR § 542.10-19. In that BP-11 Petitioner furthered his challenge of the BOP's determination that his conspiracy charge is violent, and therefore rendering him ineligible for placement on home confinement. He contends in this BP-11 that he needs home confinement in order to seek more appropriate, and more timely medical care

7

and treatment.

### viii. BOP's Rejection of Petitioner's BP-11

On February 23, 2024, Petitioner received a rejection of his BP-11 from the Central Office of the BOP, stating "[Y]ou did not provide a copy of your regional office administrative remedy appeal form or a copy of the (BP-10) response from the regional director." Of note are the dates, which shows that the Central Office received Petitioner's BP-11 one (1) day <u>before</u> he received the Region's denial on January 30th, but which was dated December 22nd. This rejection by BOP, even though Petitioner was following their posted policy, further delayed his access to the courts, furthering injuring his due process rights.

### b. Petitioner has Exhausted All Administrative Remedies Available

The administrative remedies available to inmates confined in BOP institutions are set out in the Administrative Remedy Program, found at 28 CFR §§ 542.10-19 (1998). Section 542.13(a) demands that an inmate first informally present his complaint to the staff, thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy. "If the inmate cannot informally resolve his complaint, then he may file a formal written request (a BP-9 form) to the Warden." See 28 CFR § 542.14(a). "If the inmate is not satisfied with the Warden's response, he may appeal (BP-10) to the Regional Director, and, if not satisfied with the Regional Director's response, the inmate may appeal (BP-11) to the Office of General Counsel at the BOP headquarters in Washington, D.C." See § 542.15(a)-(b).

These four administrative tiers have established response times for the BOP and for the inmate. Section 542.18 provides that as soon as the appeal

8

is accepted and filed, the Warden has 20 days to respond; the Regional Director, 30 days; and General Counsel, 40 days.

As the BOP has been untimely and non-responsive to Petitioner's administrative remedy request throughout this entire process, Petitioner asserts that he has exhausted all administrative remedies available to him, and asks this Court to consider his §2241 ripe for adjudication. "If the available administrative remedies are either unavailable or wholly inappropriate, or if the exhaustion would be futile, a petitioner need not exhaust." Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994) Such exceptions to the exhaustion requirement apply only in extraordinary circumstances, and Petitioner contends that his emergent and severe medical situation, coupled with ongoing neglect by BOP, constitutes an extraordinary circumstance, and he asks the Court to consider that he has exhausted what remedies are available to him. This Court has jurisdiction.

3. **The Government Argues that the Court Lacks Authority to Issue an Order for BOP to Place Petitioner on Home Confinement**

While it is true that the court has no authority to order BOP to place an inmate on home confinement, and that that discretion lies solely with the Bureau of Prisons, Petitioner asks the Court to see the catastrophic health situation he is experiencing and then provide him an appropriate relief so that he can seek better, more timely, and more appropriate medical care and treatment. See Tetterton v. Warden, FCI Fort Dix, No. 23-1394 (CPO), 2023 WL 4045086, at *2 (D.N.J. June 16, 2023). And while BOP has sole discretion to determine appropriate custody placement, as shown in BOP P.S. 7310.04, the BOP rarely moves inmates with critical and severe medical circumstances, such as the Petitioner, to home confinement where they could receive more timely and

more appropriate medical care, care which the American tax-payer would not need to pay for. Petitioner is afraid for his life, and he asks this Court to provide him any relief as this Court deems appropriate.

### 4. Conspiracy to Commit Arson is an Inchoate Offense

In the government's response they argue that the court lacks jurisdiction over the Bureau of Prison's classification that conspiracy to commit arson is a "crime of violence."

First, Petitioner asserts that the BOP is wrongfully utilizing an outdated definition of a violent offense in BOP Program Statement § 5162.05, and this erroneous "violent offender" designation has resulted in the BOP classifying Petitioner as <u>ineligible</u> for placement on home confinement. This status of ineligible for an inchoate conspiracy charge violates his Fifth Amendment equal protection and due process rights by treating him differently that other similarly-situated inmates without a rational basis for that discrimination.

When determining whether a conviction is a violent felony, the courts must take a categorical approach, looking only to the fact of conviction and the statutory definitions of the offense. The court should not look to the particular facts underlying those convictions. See <u>Taylor v. United States</u>, 495 U.S. 575, 602, 109 L. Ed. 2d 607, 110 S. Ct. 2143 (1990). Conspiracies, such as Conspiracy to Commit Arson, are inchoate offenses; they do not require completion of the criminal objective. See <u>United States v. Abukhatallah</u>, 41 F.4th 608, 632 (D.C. Cir. 2022) "The law has long treated conspiracy to commit a crime and the substantive crime that is the object of the conspiracy as distinct offenses rather than alternative means." Id.

10

As relevant here, a conspiracy to commit arson conviction is consistent with the post-Taylor treatment of completed Hobbs Act Robbery. The text of the Hobbs Act Robbery statute provides for inchoate offenses in the same sentence as it defines the completed offense. Yet, courts have consistently rejected the argument that Taylor applies only to the completed version of the offense, holding that the Hobbs Act Robbery statute is divisible between inchoate and completed versions of the offense. See United States v. Eccleston, No. 20-2119, 2022 U.S. App. LEXIS 24052, 2022 WL 3696664, at *2 (10th Cir. Aug. 26, 2022).

In the instant case, the U.S. Attorney's office chose to only charge Petitioner with the Conspiracy to Commit Arson, rather than Arson. As such, his crime is inchoate, and even though the act of arson was completed, the crime of conviction is inchoate and non-violent by definition.

III. CONCLUSION

The Petitioner, Imad Dawara, pleads and prays for relief from this Honorable Court; for a consideration with urgency; to consider all of the violations to his rights: his due process rights; his rights for timely access to the courts; his rights to adequate, urgent and appropriate medical care; and his rights to be treated like a human being with some dignity. He asks this Court to consider that the Bureau of Prisons has not only breached their duty of care, but has made unavailable to him the right to seek better and more appropriate medical care and treatment. If he were to be placed on home confinement or detention he would be able to do just that, and at his own expense rather than the American taxpayer's.

Mr. Dawara requests this Court protect him from further negligence by the BOP. He fears that his life is in danger, and that an adjustment to the

11

terms of his confinement to remand him to home detention or confinement is more approopriate. His situation is the quintessential "compelling" circumstance.

IV. THE COURT SHOULD EXERCISE ITS DISCRETION
AND GRANT HIS REQUEST FOR A WRIT OF HABEAS CORPUS

WHEREFORE, the Petitioner, Imad Dawara, respectfully moves this Honorable Court to (1) consider his urgent medical situation and order the Bureau of Prisons to send him to home confinement; or (2) grant him TIME SERVED on his current custodial sentence, to be followed by a new sentence of home detention for the remaining time on his custodial sentence; or (3) grant him any relief as this Court deems appropriate and just.

Respectfully submitted,

Date: 2-28-2024

Imad Dawara
Reg. No. 69939-066
FCI Fort Dix
P.O. Box 2000
Joint Base MDL, New Jersey
08640-5433

RECEIVED

MAR -7 2024

AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ